**HEINZ, Appellee,**

v.

**STEFFEN, Appellant, et al.**

[Cite as *Heinz v. Steffen* (1996), 112 Ohio App.3d 174.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 95–CA–106.

Decided June 28, 1996.

*Walter Reynolds,* for appellee.

*David M. Blank,* for appellant.

BROGAN, Presiding Judge.

The present case is before the court on the appeal of Grace Steffen from the trial court's decision granting summary judgment against her. The claims against Steffen arise from her participation in a partnership called Mobile Telecom Enterprises ("MTE"), and may be summarized as follows. Around 1983, several individuals wished to enter into the cellular phone system business and formed a corporation called ATI. Elden Heinz, one of the ATI stockholders, also operated his own business, E & J Communications ("E & J"). Because ATI needed additional financial backing, Robert Berberich and Tom Cardosi (who were not ATI stockholders) then formed MTE, a general partnership, to provide ATI with financing. Although ATI was originally supposed to develop phone systems for Cincinnati, Lexington, and Louisville, conflicts arose between the parties. As a result, MTE, in essence, took over ATI, paying ATI's obligations and using ATI assets without consulting ATI stockholders. Eventually, on March 27, 1987, MTE filed suit against ATI, Heinz, and E & J in Greene County Common Pleas Court to recover money paid to ATI for development of the phone systems. In turn, Heinz and E & J filed cross-claims and counterclaims against ATI and MTE for goods and services Heinz supplied to ATI and MTE.

Subsequently, MTE lost an arbitration and court trial, and judgment was awarded to E & J on December 7, 1990, against MTE and ATI jointly in the amount of $55,963.50, and against MTE individually in the amount of $20,329.61, with interest on both judgments from April 27, 1985. This court then affirmed the decision of the trial court. See *Mobile Telecom Ent. v. Heinz* (Feb. 12, 1992), Greene App. No. 90 CA 140, unreported, 1992 WL 24890 ("*MTE I*"). After unsuccessfully attempting to execute on the judgment against MTE as a partner-

ship, Heinz, d.b.a. E & J, then filed the present action on July 12, 1993, against Robert Berberich and Tom Cardosi, who were general partners of MTE.

Robert Berberich's deposition was taken on August 9, 1992, before the present lawsuit was filed. At that time, Berberich testified that MTE was a general, not a limited partnership, and that MTE had only two general partners—himself and Cardosi. However, after the lawsuit was filed, copies of MTE's 1986 partnership tax returns were provided to Heinz and revealed that three people were listed as MTE general partners: Berberich, Cardosi, and appellant Grace Steffen. Berberich also later contended, in responding to a summary judgment motion, that MTE was a limited and general partnership, with several limited partners. Based on the information in the tax return, Heinz filed a motion on June 16, 1994, asking for leave to file an amended complaint naming Steffen as an additional defendant. At the same time, Heinz asked that the trial court defer a ruling on a pending summary judgment motion in order to give Steffen time to respond to the motion. The court agreed, and Steffen then filed her answer on October 6, 1994. She did not, however, file a response to the pending summary judgment motion.

After a hearing on November 9, 1994, the trial court granted a partial summary judgment, finding that any and all general partners of MTE were jointly liable for the judgment against MTE. The court also held that the evidence before it was not yet sufficient to make a determination on Steffen's status as a general partner at the time the liability accrued. Accordingly, the court granted the parties additional time to conduct discovery on the identities of all past and present general partners, their dates of admission to the partnership, dates of retirement, and any other information relevant to the joint liability of past and present MTE partners.

Following the court's decision, Heinz conducted discovery and then filed a motion for summary judgment against Steffen and Cardosi on January 23, 1995. Attached to the motion were the deposition of Grace Steffen, taken on November 30, 1994, and Steffen's undated affidavit, which had previously been filed on August 12, 1994, as part of a motion for relief from judgment that Berberich and MTE had filed in *MTE I*.[1] In the affidavit, Steffen said she had been a general partner in a partnership called Mobile Telecom Enterprise, Limited and remained a partner until 1987. She also testified that she was a partner (without

---

1. Ironically, MTE and Berberich had mistakenly filed the motion for relief from judgment as pleadings in this case. An agreed entry was then filed on November 1, 1994, dismissing the motion and a memorandum in opposition as pleadings in this case and ordering them filed in the proper action, that being case No. 87 CV 112 in the Greene County Common Pleas Court. However, the original affidavit of Steffen and the motion are still contained in the file in the present case.

qualification as to type) in another partnership, designated as Mobile Telecom Enterprise. A previous affidavit signed by Steffen on December 14, 1987, and filed in *MTE I*, identified her *as of that date* as a partner (again, without qualification as to type of partner) and secretary of Mobile Telecom Enterprise. In this affidavit, Steffen further stated that Heinz, d.b.a. E & J, ATI, and others had agreed to perform certain services for MTE, but had not performed in accordance with the agreement.

The affidavits thus reveal that Steffen's interest in MTE began in 1983 and ran through at least December 14, 1987. Although the tax returns have not been properly authenticated, the parties do not appear to dispute that Steffen is listed on all tax returns as a general partner, regardless of the year and entity name, *i.e.*, either MTE or MTE Limited.[2]

Steffen's testimony was that she was given ownership in lieu of payment for clerical work she performed for Berberich, because no money was available to pay her. Further, although Berberich testified that a formal partnership agreement for MTE existed, Steffen said she had never been given a document concerning her ownership interest. She also indicated she never attended partnership meetings and had no authority to participate in partnership decisions.

After considering the motions, the trial court granted summary judgment against Steffen, based on *Wayne Smith Constr. Co. v. Wolman, Duberstein & Thompson* (1992), 65 Ohio St.3d 383, 604 N.E.2d 157, finding Steffen liable for one third of the total judgment against MTE, or $25,431.04, plus interest from April 27, 1985. The trial court also entered a finding, pursuant to Civ.R. 54 that there was no just reason for delay and that the order was a final, appealable order. Summary judgment was also granted against Cardosi, who had not filed a response to the motion. Finally, Berberich had previously paid his one-third share of the judgment and had been dismissed from the case on March 23, 1995.

On appeal, Steffen raises the following assignments of error:

"I. The trial court erred in granting summary judgment because any action against Steffen is barred by *res judicata.*

---

**2.** If resort to the unauthenticated tax returns is made, and testimony in various affidavits and Steffen's deposition are compared, it appears that Steffen was listed as a general partner of "MTE Limited" in 1984, with no percentage of loss or profit sharing assigned. In 1986 and 1987, she is still listed as a general partner in MTE Limited, but her share of losses, only (not profits), is designated as .03 percent. In both 1984 and 1986, Steffen was listed as a general partner of MTE, with a three-percent share of profits and losses. The tax forms for 1985 were not submitted, even in unauthenticated form. For reasons which will become apparent, the amount of Steffen's share or the entity name used is irrelevant. The undisputed fact is that Steffen was listed as a general partner on the tax returns for both MTE and MTE Limited.

"II. The trial court erred in granting summary judgment by finding as a matter of law that Steffen was a general partner.

"III. The trial court erred by finding as a matter of law that *Ohio Rev.Code Ann.* § 1775.14(B) authorizes an equal division of judgment debt between Steffen and other MTE partners.

"IV. The trial court erred in awarding pre- and postjudgment interest from April 27, 1985 plus court costs."

Before discussing the assignments of error, we are compelled to address an issue not raised by the parties, *i.e.,* choice of law. MTE appears to be a Kentucky partnership (although this is not shown by the record, other than by inference, since the addresses listed for MTE on tax returns is a Kentucky address). In addition, Berberich and Steffen are Kentucky residents. However, the primary work of MTE occurred in Ohio, and suit was initiated in Ohio by MTE. Despite these facts, the parties have not really addressed the issue of whether Kentucky or Ohio law should apply, although Heinz did state in a footnote in its supplemental memorandum in support of summary judgment that any complications arising from contacts with Kentucky were rendered moot by Kentucky's adoption of the Uniform Partnership Act. This would be true, except for the fact that some differences exist between Kentucky and Ohio law. For example, before the amendment of the Uniform Partnership Law in 1994, Kentucky did not permit partnerships to sue or be sued in their own names. Instead, individual partners had to be named as plaintiffs in actions brought by the partnership and as defendants in actions brought against the partnership. See *Telamarketing Communications, Inc. v. Liberty Partners* (Ky.1990), 798 S.W.2d 462, and Ky.Rev.Stat.Ann. 362.000 (indicating approval on April 11, 1994, of section allowing partnerships to sue or be sued in their own name). By contrast, Ohio has long allowed suits by and against partnerships in their own names. See *Hall v. Oldfield Tire & Rubber Co.* (1927), 117 Ohio St. 247, 158 N.E. 191, and R.C. 2309.09.

In *Gries Sports Ent., Inc. v. Modell* (1984) 15 Ohio St.3d 284, 15 OBR 417, 473 N.E.2d 807, the Ohio Supreme Court adopted the following approach to resolving conflicts of law in cases where the parties do not contractually make an effective choice of law:

"[T]he contacts to be taken into account to determine the law applicable to an issue include:

"(a) the place of contracting,

"(b) the place of negotiation of the contract,

"(c) the place of performance,

"(d) the location of the subject matter of the contract, and

"(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

"(Section 188 of 1 Restatement of the Law 2d, Conflict of Laws, adopted and applied.)" *Gries* at syllabus.

In the present case, no formal partnership agreement was produced, nor was testimony given about where the partnership agreement was negotiated. However, the parties to the partnership were Kentucky residents, which militates in favor of applying Kentucky law. On the other hand, Ohio was the primary business focus of the partnership, according to the deposition testimony of Berberich, the December 14, 1987 affidavit of Grace Steffen, and the opinion rendered by this court in *MTE I,* all of which indicate that most of MTE's business was in Ohio. These factors weigh in favor of applying Ohio law.

Of even more significance is the fact that MTE itself chose to invoke Ohio as the forum for its original suit. Traditional principles in this context indicate that the law of the forum applies to remedial rights, including procedures for enforcement. See, *e.g., Guider v. LCI Communications Holdings Co.* (1993), 87 Ohio App.3d 412, 417, 622 N.E.2d 415, 419. Given the fact that Ohio was the primary place of business of the partnership and the fact that Ohio was the forum chosen by MTE, we conclude that Ohio has the most significant contacts with this case. Accordingly, Ohio law applies both as the law of the forum for remedial matters and as to substantive issues.[3]

I

Having resolved the issue of the applicable law, we will now consider the first assignment of error. In this context, Steffen argues that *res judicata* bars the action against her because under the common law, a judgment rendered against fewer than all partners on an obligation bars a claim against co-partners who were not parties to the suit or judgment. We do not agree.

___

3. In this regard, we note that Kentucky, in adopting the Uniform Partnership Act, has expressed the intent that the Act be interpreted consistently with other enacting states. See Ky.Rev.Stat.Ann. 362.165. Accordingly, we conclude that even if Kentucky law were applied as to substantive matters, Kentucky would reach the same conclusions as Ohio courts, absent specific contrary authority. While we have noted the distinction in the main text between Kentucky and Ohio concerning suit by or against partners, we do not find this conflict material. While MTE would not have been able to bring suit in its partnership name in Kentucky, it was able to (and did) bring suit in Ohio. Consequently, having elected its remedy, MTE and its partners must abide by the choice. In addition, we perceive this particular issue to be remedial as opposed to a substantive issue like partnership status, which is determined by applying the law to the relevant facts.

Initially, we note that Steffen has waived this argument by failing to present it to the trial court. Although Steffen asserted *res judicata* in her answer, she did not mention it in any of her responses to summary judgment. See *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 210, 24 O.O.3d 316, 317, 436 N.E.2d 1001, 1003 (noting fundamental rule that appellate courts will not consider errors that could have been brought to trial court's attention and avoided). On appeal, Steffen contends that she did not raise *res judicata* below because these arguments had already been made by defendants Berberich and Cardosi in motions to dismiss at the beginning of this action. Steffen further claims that she was precluded from making this argument because she was not a party at that time and because a judgment on liability was rendered shortly thereafter, before she became a party. However, an examination of the record indicates this is not the case. First, the *res judicata* argument made in Berberich's and Cardosi's motions to dismiss was that this suit was precluded because they had been named in the previous action but had not been found liable. The trial court overruled their motions on November 16, 1993, based on the fact that the present case did not seek to relitigate the liability of the parties to the previous action, but was an attempt to enforce the judgment against the partnership.

The argument made by Berberich and Cardosi is the converse of Steffen's *res judicata* argument, as her claim is that this action is precluded precisely because she was not named in the previous action. Consequently, the trial court's decision on the motion to dismiss should not have affected her assertion of this affirmative defense. However, even if this were otherwise, the decision on the motion to dismiss was not a decision on "liability," but was merely a determination that the complaint stated a claim against Berberich and Cardosi. The only judgments on liability occurred on the following dates: November 23, 1994, when partial summary judgment was granted on the issue of whether general partners would be jointly liable for the debt to Heinz; on October 27, 1995, when summary judgment was granted against Grace Steffen; and on October 29, 1995, when summary judgment was granted against Cardosi. The first of these judgments occurred approximately six weeks after Steffen filed an answer. However, as was previously noted, Steffen did not file a response to the pending motion for summary judgment, nor did she ask for an extension of time to respond. Consequently, we cannot accept Steffen's contention that she was precluded, somehow, from raising the *res judicata* issue at the trial level.

However, even if we considered the application of *res judicata* as asserted by Steffen, it would not bar the present action. While Steffen urges us to follow common-law decisions that purportedly bar subsequent suit against a partner on an obligation when less than all partners were originally sued, the authority cited by Steffen is inapplicable. For example, *Sloo v. Lea* (1849), 18 Ohio 279, and the

few cases following that decision, involved suits on cognovit and promissory notes, which at common law raised particular considerations meriting application of the doctrine that an instrument sued on is merged into the judgment. As was noted in *Yoho v. McGovern* (1884), 42 Ohio St. 11 (which is the most recent Ohio Supreme Court case citing *Sloo* ), "at the common law, if two or more persons are charged as joint makers of a note, the plaintiff suing on it cannot recover unless all charged are found to be liable." *Id.* at 13.

In contrast, Ohio has long permitted execution against partners individually after a judgment has been obtained against a partnership. In *Hall, supra,* 117 Ohio St. 247, 158 N.E. 191, the Supreme Court indicated that at least since 1846, creditors had possessed the ability to sue a partnership and execute against the individual partners by setting forth the judgment and the insufficiency of partnership property to satisfy the judgment. *Id.* at 250, 158 N.E.2d at 192 (interpreting predecessor statutes to R.C. 2309.09). In *Hall,* the partnership and an individual partner had been sued in Alabama, but the partner was dismissed based on failure of service. After receiving judgment against the partnership, the creditor brought suit in Ohio against the partner. While the Supreme Court ordered the action dismissed because of the creditor's failure to allege that partnership assets were insufficient to satisfy the judgment, the court's discussion of the statutes authorizing suit against partners clearly indicated that suit against the partner would have otherwise been proper. *Wayne Smith, supra,* 65 Ohio St.3d 383, 604 N.E.2d 157, reached a similar decision, permitting suit against the partners after exhaustion of partnership assets even though the partners had previously been found not individually liable. *Id.* at 391–392, 604 N.E.2d at 163–164.

Steffen has attempted to distinguish *Wayne Smith* because the partners in that case were parties to the previous action, whereas she was not a party to *MTE I.* However, we see nothing to separate this case from the *Hall* decision, where suit would clearly have been proper against a partner who was not served and made a part of the prior action. As we noted previously, MTE chose the present forum, with its associated remedies and rights, and is bound by that decision. Consequently, we do not find the *res judicata* argument meritorious, even if properly raised. Accordingly, the first assignment of error is overruled.

## II

In the second assignment of error, Steffen contends that summary judgment was improper because factual issues surround her status as a general partner. In particular, as indicia of her lack of general partner status, Steffen

points to her acceptance of ownership in lieu of wages for clerical work, her three-percent interest in the partnership, and her lack of participation in partnership meetings and decisionmaking.

In assessing the propriety of summary judgment, the following standards are applied:

" 'The appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.' " *Doner v. Snapp* (1994), 98 Ohio App.3d 597, 600, 649 N.E.2d 42, 43–44, quoting *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47.

Moreover, we also commented in *Doner* as follows:

" '[S]ince the propriety of summary judgment is a question of law,' *Children's Med. Ctr. v. Ward* (1993), 87 Ohio App.3d 504, 508, 622 N.E.2d 692, 695, we apply the same standard as the trial court in our review of the court's disposition of the motion; in other words, our review is *de novo. Id.* However, we do not weigh the evidence; we 'accept the evidence properly before [us] and, with respect to the merit issues involved, construe the evidence most strongly in favor of the claims of the party against whom the motion is made.' *Buckingham v. Middlestetter* (Mar. 22, 1993), Montgomery App. No. 13575, unreported, 1993 WL 81827." *Id.* at 600, 649 N.E.2d at 44.

In the present case, reviewing the evidence *de novo*, we find that Grace Steffen has raised no *material* issues of fact about her partnership status. As we previously observed, Steffen's affidavits all indicate that she was a partner, and the tax returns reveal that she was listed as a general partner of all entities, whether MTE or MTE Limited. A limited partnership, with general and limited partners, departs from the common law, which holds all partners jointly liable for partnership obligations. *Wayne Smith, supra*, 65 Ohio St.3d at 388, 604 N.E.2d at 161. Therefore, given Steffen's admission on numerous occasions that she was a partner, and the tax returns, which list her as a general partner, the only way for her joint liability to have been eliminated would have been through the formation of a valid limited partnership, in which Steffen, in fact, had limited partner status. However, Steffen failed to present any evidence indicating this was the case.

In this context, R.C. 1782.08(A) provides:

"In order to form a limited partnership, two or more persons shall execute a certificate of limited partnership. The certificate shall be filed in the office of the recorder of the county in which the principal place of business of the limited partnership is located."

Subsection (A) also requires that the certificate identify pertinent information such as the partnership name, character of business, names and addresses of partners, and rights relating to capital contribution, partnership termination, and distribution. As a further matter, subsection (B) of R.C. 1782.08 provides that a limited partnership is formed at the time of the filing or at any later time, if there has been substantial compliance with the requirements of division (A).[4] A failure to comply with the filing requirements has been interpreted in Ohio to mean that the partnership was a general partnership, as a matter of law. See *Battista v. Lebanon Trotting Assn.* (C.A.6, 1976), 538 F.2d 111, 114.

■ Given Steffen's failure to show that a valid limited partnership was ever formed in accordance with either Ohio or Kentucky law, the only conclusion that can be drawn is that she was a general partner. In light of this finding, we need not consider Steffen's remaining arguments about her partnership status, including the application of R.C. 1775.06(D), which allows prima facie evidence of partnership to be raised by receipt of a share of profits, except if profits are received in lieu of wages. The factors in R.C. 1775.06 would only be relevant if the existence of a partnership were disputed in the first place. Here, on the contrary, Steffen's testimony on numerous occasions was that she was a partner, and the only issue would be whether her interest was that of a limited or a general partner.

Based on the foregoing analysis, the second assignment of error is overruled.

### III

■ In the third assignment of error, Steffen argues that the trial court erred in finding that R.C. 1775.14(B) allocates an equal division of partnership debt to each partner. Steffen's contention in this regard is that because her profit-sharing interest was limited to three percent, her liability for partnership debt should be correspondingly decreased. Both sides agree that the controlling case

---

4. Kentucky has similar requirements for the formation of limited partnerships. See Ky.Rev. Stat.Ann. 362.415.

is *Wayne Smith, supra,* 65 Ohio St.3d 383, 604 N.E.2d 157. In *Wayne Smith,* the Supreme Court discussed the distinction between joint liability and joint and several liability, noting:

"Joint liability apportions responsibility for a contractual debt equally, in the absence of a partnership agreement to the contrary, among the partners and thereby limits the creditor's execution on one individual partner's personal property to a pro rata share of the debt." *Id.* at 388, 604 N.E.2d at 161.

The Supreme Court then went on to comment that in cases of joint and several liability, each partner would be responsible for the entire amount of the partnership debt. *Id.*

Steffen contends that "pro rata" should be interpreted in the present case to mean a three-percent share, at most. As authority, Steffen points to R.C. 1775.17, which sets forth a requirement that partners must contribute toward partnership losses in proportion to their share of profit, and to *Deist v. Timmins* (1986), 32 Ohio App.3d 74, 513 N.E.2d 1382, which stated as follows in an action for accounting after partnership dissolution:

"Nevertheless, defendant maintains that even if a settling of the partners' accounts would show that plaintiff is indebted to defendant, it was within the trial court's discretion not to settle the accounts of the partners. Partners are jointly liable for all debts and obligations of the partnership, pursuant to R.C. 1775.14(B). Further, without an agreement to the contrary, partners shall share in the partnership losses in the same proportion as they share in the profits. See R.C. 1775.17(A). In this case, the parties agreed to share equally in the losses and profits of the partnership. Since there was no other agreement, both plaintiff and defendant are jointly liable for all of the debts and obligations of the partnership." *Id.* at 78, 513 N.E.2d at 1386.

We do not agree with Steffen that the above authority requires limitation of her joint liability to a three-percent share. The pertinent Ohio sections (R.C. 1775.14 and 1775.17) are equivalent to Sections 15 and 18, respectively, of the Uniform Partnership Act (1914). See 1 Bromberg & Ribstein on Partnership (1996) App. A. While Section 15 is contained in Part III of the Act (entitled "Relations of Partners to Persons Dealing with the Partnership"), Section 18 is found in Part IV (entitled "Relations of Partners to One Another"). *Id.* at A:14 and A:15. Thus, any provision in Section 18 or in R.C. 1775.17 allocating liability for losses in relationship to shares is only pertinent to the rights and duties of the partners to each other, and is not relevant to liability towards third parties. This is consistent with the situation in the *Deist* case, as that action was one for an

accounting between partners. Obviously, *Deist* is distinguishable from the present case, which is not an accounting between partners, but is an action to enforce a third party's judgment against the partnership.

We were not able to find any authority in Ohio on this point, but other jurisdictions have rejected attempts by partners to limit their joint liability in the manner urged by Steffen, even where the agreement among the partners provided for limitation of liability to the extent of the partners' share in the partnership. For example, in *Dominion Natl. Bank v. Sundowner Joint Venture* (1981), 50 Md.App. 145, 436 A.2d 501, the court refused to relieve partners of smaller respective shares from joint liability. In this context, the court stated:

"Under partnership law, general partners are jointly liable for the contractual debts of the partnership * * *; and ordinarily, agreements among partners * * * to limit their liability are not binding on third parties dealing with the partnership." *Id.* at 159, 436 A.2d at 509.

The court noted that where the creditor, in fact, knows of the limitation and consents to it, he then has made a special type of contract, agreeing not to look to the partners' joint liability for their full obligation. *Id.* However, absent actual knowledge and assent, the creditor would not be bound by the partners' attempt to restrict their liability. Accordingly, the court found that partners with even small respective shares (like Steffen), of two and a half and five percent would be jointly liable for partnership obligations. *Id.* at 167, 436 A.2d 513. See, also, *Demas v. Convention Motor Inns* (1977), 268 S.C. 186, 232 S.E.2d 724 (holding that where lender had notice of and accepted limitation of liability, partners who restricted their liability were liable for deficiency judgment on mortgage foreclosure only for their respective percentage shares in partnership).[5]

Because the undisputed facts of this case do not reveal, as a threshold matter, any evidence of knowledge on the part of Heinz or E & J that Steffen's liability was restricted, no basis exists for even considering Steffen's argument that her

---

5. In this context, we note that Steffen has offered no evidence of an agreement among the MTE partners that her joint liability would be limited. The most that appears is an inference, based on the fact that her share is listed on tax returns as a three-percent share. This is far short of the agreement in *Dominion*, for example, which expressly limited the partners' liability. However, even in that event, the limitation would not be effective unless the creditor had notice of the limitation and agreed to it. Therefore, as a threshold matter, a partner claiming limited liability must show that the creditor knew of the limitation and agreed to it. In the present case, the undisputed facts do not meet even this threshold. We also note, parenthetically, that Steffen has the possibility of filing an action for contribution against Berberich, pursuant to R.C. 1779.10, which provides that a compromise by a partner does not affect the rights of other partners to call upon the partner for his ratable portion of partnership debt.

joint liability should be restricted to a smaller share. Consequently, the third assignment of error is overruled.

IV

■ As her final assignment of error, Steffen claims that prejudgment and postjudgment interest was not properly awarded because the amount of her debt is unliquidated and unascertainable until her liability is finally determined on appeal. In this context, Steffen relies on *Braverman v. Spriggs* (1980), 68 Ohio App.2d 58, 426 N.E.2d 526, which held that the running of interest should be delayed where the amount of a debt is uncertain or unliquidated. However, in a recent decision, the Ohio Supreme Court rejected the doctrine set forth in *Braverman.*

In *Royal Elec. Constr. Corp. v. Ohio State Univ.* (1995), 73 Ohio St.3d 110, 652 N.E.2d 687, the Supreme Court noted that significant confusion had been spawned by *Braverman,* and commented as follows:

"It is apparent that courts in Ohio have attached great significance to the liquidated-unliquidated dichotomy, or have refined this rule and allowed prejudgment interest in situations where the claim is unliquidated but 'capable of ascertainment.' It is also apparent that these judicial creations (liquidated-unliquidated and capable-of-ascertainment tests) have caused much confusion among members of our bench and bar in deciding under what circumstances prejudgment interest is warranted. Hence, we believe that the focus in these types of cases should not be based on whether the claim can be classified as 'liquidated,' 'unliquidated' or 'capable of ascertainment.' Rather, in determining whether to award prejudgment interest, a court need only ask one question: Has the aggrieved party been fully compensated?" (Footnote and citations omitted.) *Id.* at 116, 652 N.E.2d at 691–692.

■ While the syllabus of the *Royal Elec.* decision is limited to interest awarded pursuant to R.C. 2743.18(A) and 1343.03(A) in Court of Claims cases, the text of the case, as quoted above, was clearly intended to be read very broadly. Consequently, lower courts would be remiss in continuing to apply *Braverman*'s liquidated-unliquidated standard instead of the Supreme Court's new test, *i.e.,* whether the aggrieved party has been fully compensated. Thus, the pertinent inquiry in the present case has been whether Heinz, d.b.a. E & J, is fully compensated by the interest awarded.

We believe that the interest does fully compensate Heinz and was appropriately awarded. In the first place, the propriety of interest was previously litigated

and determined to be appropriate. Second, as the Supreme Court noted in *Royal Elec.*:

"An award of prejudgment interest encourages prompt settlement and discourages defendants from opposing and prolonging, between injury and judgment, legitimate claims. Further, prejudgment interest does not punish the party responsible for the underlying damages as suggested by appellees, but, rather, it acts as compensation and serves ultimately to make the aggrieved party whole. Indeed, to make the aggrieved party whole, the party should be compensated for the lapse of time between accrual of the claim and judgment.

"[W]e are not here concerned with what is or is not the majority view. * * * In addition, we are more persuaded by those states that have moved away from the medieval notion that interest is evil. ('At the moment the cause of action accrued, the injured party was entitled to be left whole and became immediately entitled to be made whole. * * * All damages then, whether liquidated or unliquidated, pecuniary or nonpecuniary, should carry interest from the time the cause of action accrues.')." (Citations omitted.) 73 Ohio St.3d at 116–117, 652 N.E.2d at 692.

Based on these comments, awarding interest would appear to be merited in most situations. We see no reason to depart from that rule in the present case, which involves debts that have remained unpaid for over ten years. Accordingly, the fourth assignment of error is overruled.

Based on the preceding discussion, the first, second, third, and fourth assignments of error are overruled. The decision of the trial court is affirmed and costs are awarded against appellant.

*Judgment affirmed.*

FAIN and FREDERICK N. YOUNG, JJ., concur.