DONEGAL MUTUAL INSURANCE et al., Appellants and Cross–Appellees,

v.

WHITE CONSOLIDATED INDUSTRIES, INC., Appellee and Cross–Appellant.

[Cite as *Donegal Mut. Ins. v. White Consol. Industries, Inc.*, 166 Ohio App.3d 569, 2006-Ohio-1586.]

Court of Appeals of Ohio,
Second District, Darke County.

No. 1657.

Decided March 31, 2006.

570

Thomas J. Vozar, for appellants and cross-appellees.

Jeffrey J. Jurca and Monica L. Waller, for appellee and cross-appellant.

---

DONOVAN, Judge.

{¶ 1} Plaintiff-appellants, Donegal Mutual Insurance Company, David Nearon, and Susan Nearon ("plaintiffs"), appeal from a decision of the Darke County Court of Common Pleas that partially sustained a motion for judgment notwithstanding the verdict ("JNOV") filed by defendant-appellee, White Consolidated Industries, Inc. ("White") after a jury trial held on September 13, 14, and 15, 2004. Plaintiffs also appeal from the trial court's decision to reduce the amount of damages awarded them by the jury as a result of its partial grant of JNOV. Lastly, plaintiffs argue that the trial court erred when it overruled their motion for prejudgment interest.

{¶ 2} In its cross-appeal, White argues that the trial court erred when it refused to strike the testimony of plaintiffs' expert, Bernard Doran. Additionally, White asserts that the trial court erred when it denied its motion for directed verdict and its motion for JNOV with respect to plaintiffs' manufacturing-defect claim, because plaintiffs failed to present sufficient evidence on that cause of action. In its final cross-assignment, White contends that the trial court erred by overruling its motion for new trial.

I

{¶ 3} Initially, it should be noted that this is the third occasion in which the instant matter has appeared before us.

{¶ 4} On May 11, 1995, a fire destroyed the residence of David and Susan Nearon. After an investigation concerning the cause of the fire, Donegal Mutual Insurance, the insurer of the home, paid the Nearons $130,712.48 for the damages that they had suffered.

{¶ 5} In May 1997, the Nearons filed a lawsuit against White, in which they claimed that a Frigidaire electric stove had caused the fire that destroyed their home. After the trial court ordered that Donegal be joined as a party to assert any existing subrogation interests, the Nearons voluntarily dismissed the cause without prejudice on May 11, 1999.

{¶ 6} The Nearons refiled the action on May 11, 2000. After determining that they had failed to abide by the terms of a pretrial scheduling order, the trial court sanctioned plaintiffs by dismissing their cause of action. In *Donegal Mut. Ins. Co. v. White Consol. Industries* (Oct. 26, 2001), Darke County App. No.2001 CA 1549, 2001 WL 1295362, we reversed that dismissal and remanded the cause for trial.

{¶ 7} In early September 2002, the first trial was held, and the jury found in favor of White with respect to plaintiffs' product-liability claims. Plaintiffs moved for a new trial, arguing that White's expert witnesses were not qualified to testify in the state of Ohio. The trial court denied the motion, and plaintiffs appealed the matter to this court. We reversed the decision of the trial court and remanded the cause for a new trial. See *Donegal Mut. Ins. Co. v. White Consol. Industries* (2003), 153 Ohio App.3d 619, 2003-Ohio-4202, 795 N.E.2d 133.

{¶ 8} The cause proceeded to trial a second time on September 13, 2005. At the close of the trial, the jury found in favor of plaintiffs on both a design-defect and a manufacturing-defect theory of product liability with respect to the allegedly malfunctioning electric stove built by White. On the design-defect claim, the Nearons were awarded $15,000, and Donegal was awarded $37,000. The jurors separately awarded the Nearons $15,000 and awarded Donegal $37,000 on the manufacturing-defect claim, for a grand total of $104,000 in damages.

{¶ 9} White subsequently moved for a new trial and for a JNOV, while the Nearons requested prejudgment interest. As mentioned above, the trial court overruled White's motion for a new trial but sustained its motion for JNOV with respect to the Nearons' design-defect claim. Pursuant to this ruling, the trial court reduced the monetary award to appellants by $15,000 for the Nearons and $37,000 for Donegal. Further, the trial court denied the Nearons' motion for prejudgment interest. Accordingly, the trial court entered judgment for the Nearons for a total of $15,000 and in favor of Donegal for a total of $37,000.

{¶ 10} It is from this judgment that the Nearons and Donegal appeal. It is from the same judgment that White cross-appeals.

### Plaintiffs' Appeal

### II

{¶ 11} Plaintiffs' first assignment of error is as follows:

{¶ 12} "The trial court erred in granting defendant's motion for judgment notwithstanding the verdict as to the jury's finding of a design defect in that the court failed to consider all of the evidence most favorable to the non-moving party."

{¶ 13} In their first assignment, plaintiffs contend that the trial court abused its discretion when it sustained White's motion for JNOV with respect to the claim for design defect. Specifically, plaintiffs assert that in light of the evidence presented at trial on the issue, the jury reasonably found the existence of a design defect in the control switch on the electric stove. Thus, it was error for the trial court to set aside the jury's finding that the electric stove suffered from a design defect that caused the fire that destroyed the Nearons' residence. We agree.

{¶ 14} The standard for reviewing a trial court's decision concerning a JNOV is the same as that applicable to a motion for directed verdict. *Nickell v. Gonzalez* (1985), 17 Ohio St.3d 136, 137, 17 OBR 281, 477 N.E.2d 1145. In ruling upon a motion for JNOV, "the court must construe the evidence most strongly in favor of the party against whom the motion is made. Where the evidence is such that reasonable minds may derive differing conclusions therefrom, the motion must be denied. The court shall not consider the weight of the evidence or the credibility of the witnesses in determining its ruling on the motion. In short, every effort must be made to uphold the verdict if reasonably possible." *Motorists Mut. Ins. Co. v. Hamilton Twp. Trustees* (1986), 28 Ohio St.3d 13, 15, 28 OBR 77, 502 N.E.2d 204. The nonmovant is also given the benefit of all reasonable inferences from the evidence. *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 68, 23 O.O.3d 115, 430 N.E.2d 935. Appellate review of a motion for JNOV is de novo.

{¶ 15} In order to establish the elements of a products-liability design-defect claim, a plaintiff must show that (1) there was a defect in the product manufactured and sold by the defendant, (2) the defect existed at the time the product left the defendant's control, and (3) the defect was the direct and proximate cause of the plaintiff's injuries or losses. *State Farm Fire & Cas. Co. v. Chrysler Corp.* (1988), 37 Ohio St.3d 1, 5–6, 523 N.E.2d 489.

{¶ 16} At the close of trial, the court instructed the jury to apply the "consumer-expectation test" pertaining to design defect. Under the consumer-expectation test, a product is defective in design or formulation when it is "more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." Former R.C. 2307.75(A)(2), Sub.S.B. No. 108, 149 Ohio Laws, Part I, 382, 438. Moreover, the question of what an ordinary consumer expects in terms of the risks posed by the product is generally one for

the trier of fact. *Welch Sand & Gravel, Inc. v. O & K Trojan, Inc.* (1995), 107 Ohio App.3d 218, 225, 668 N.E.2d 529, 533–534.

■ {¶ 17} Plaintiffs presented evidence of unsafe, unexpected product performance when they alleged that Susan Nearon merely set the electric stove to self-clean mode before it acted defectively and caused the fire that destroyed the Nearons' residence. This is sufficient evidence from which a trier of fact may infer the existence of a product defect. However, satisfaction of the consumer-expectation test is not all a plaintiff must prove in a product-liability action premised on a design defect. As we previously stated, a plaintiff must also present evidence that the defect was the direct and proximate cause of his injuries or losses.

■ {¶ 18} White argues that plaintiffs were unable to establish the element of proximate cause at trial because the court found that their expert, Bernard Doran, was not qualified to opine as to whether the electric stove was designed improperly and precluded him from testifying that the proximate cause of the fire was a design defect in the switch on the stove. Thus, White asserts that without expert testimony to that effect, plaintiffs failed to produce sufficient evidence demonstrating causation, and the trial court was correct in granting the JNOV with respect to the design-defect claim.

■ {¶ 19} In order to establish the third element of a design-defect claim, proximate causation, the plaintiff must prove by a preponderance of the evidence that some aspect of the challenged design rendered the product's performance less safe than the ordinary consumer would expect, resulting in injury. *Atkins v. Gen. Motors Corp.* (1999), 132 Ohio App.3d 556, 725 N.E.2d 727, citing *State Farm Fire & Cas. Co.*, 37 Ohio St.3d 1, 523 N.E.2d 489. Proof of causation must be by probability. *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St.3d 367, 369, 28 OBR 429, 504 N.E.2d 44. Thus, a plaintiff must offer proof that the allegedly defective condition was the most probable cause of his injuries or losses. *Fogle v. Cessna Aircraft Co.* (Jan. 16, 1992), Franklin County App. No. 90AP–977, 1992 WL 10272. The proof necessary to adequately demonstrate that the defect was the proximate cause of the plaintiff's injuries may be either direct or circumstantial. *State Farm Fire & Cas. Co.*, supra.

{¶ 20} Although Doran was ultimately not allowed to testify as to the exact nature of the design defect that was the proximate cause of the fire, plaintiffs presented abundant circumstantial evidence from which a trier of fact could readily infer that an electrical fault within the switch on the stove had caused the fire that destroyed the Nearons' residence. In particular, the trial court allowed Doran to testify in detail that an electrical fault within the switch caused the fire. The fact that he was not allowed to testify as to the exact nature of the design

defect that caused the electrical fault that led to the fire is irrelevant. Insofar as the evidence suggests that an electrical fault within the switch on the Nearons' stove caused the fire, a jury could properly conclude that the switch had been defectively designed.

{¶ 21} Construing the evidence most strongly in favor of the nonmoving party, the plaintiffs in this case, we find that the JNOV was improvidently granted. When plaintiffs are afforded the benefit of all reasonable inferences from the evidence, it is clear that the trial court erred, and the jury's verdict should be reinstated with respect to the claim for design defect.

{¶ 22} Plaintiffs' first assignment of error is sustained.

### III

{¶ 23} Plaintiffs' second assignment of error is as follows:

{¶ 24} "The trial court erred in reducing the jury's verdict to $52,000.00 as a result of the court's decision to partially grant defendant's motion for JNOV, because even if there was insufficient evidence to support a design defect the jury's finding of manufacturing defect independently supports the jury's total verdict of $104,000.00."

{¶ 25} In light of our holding with respect to plaintiffs' first assignment, we find it unnecessary to address the merits of their second assignment, which is rendered moot. Having reversed the trial court's decision granting White's JNOV with respect to plaintiffs' design-defect claim, we hold that the original monetary award totaling $104,000 is reinstated, and the trial court's decision reducing that amount is hereby set aside.

### IV

{¶ 26} Plaintiffs' third assignment of error is as follows:

{¶ 27} "The trial court erred in denying plaintiffs' motion for prejudgment interest because the court's ruling is contrary to law."

{¶ 28} In their third and final assignment, plaintiffs contend that the trial court abused its discretion when it denied a motion for prejudgment interest on the damages award. Specifically, plaintiffs argue that when it denied the motion, the trial court applied the incorrect test when determining whether to award prejudgment interest. Plaintiffs assert that an award of prejudgment interest is mandatory in the present case. We disagree.

{¶ 29} Decisions on the grant or denial of prejudgment interest are within the discretion of the trial court and will not be disturbed absent an abuse of that discretion. *Wagner v. Midwestern Indemn. Co.* (1998), 83 Ohio St.3d 287,

292, 699 N.E.2d 507. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. Moreover, an abuse of discretion is a "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. Under this standard, an appellate court may not merely substitute its judgment for that of the trial court. Id.

{¶ 30} In support of their position, plaintiffs cite this court's decision in *Heinz v. Steffen* (1996), 112 Ohio App.3d 174, 678 N.E.2d 264, for the proposition that the trial court has no discretion to disallow an award of prejudgment interest when that award is necessary to make the aggrieved party whole. While this statement is certainly true, plaintiffs argue that this interpretation applies in both contract and tort cases. *Heinz* dealt with prejudgment interest in a contract action filed by a judgment debtor to collect a judgment pursuant to R.C. 1343.03(A).

{¶ 31} The holding in *Heinz*, however, does not extend to the grant or denial of prejudgment interest in tort cases. The trial court determines whether to award prejudgment interest in a tort case pursuant to R.C. 1343.03(C), which states:

{¶ 32} "Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which money is paid if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."

{¶ 33} This statute was enacted to promote settlement efforts, prevent parties who engage in tortious conduct from frivolously delaying the ultimate resolution of cases, and encourage good faith efforts to settle controversies outside a trial setting. *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 159, 25 OBR 201, 495 N.E.2d 572. A party has not "failed to make a good faith effort to settle" under R.C. 1343.03(C) if it has (1) fully cooperated in discovery proceedings, (2) rationally evaluated its risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement or responded in good faith to an offer from the other party. Id. If a party has a good faith, objectively reasonable belief that it has no liability, it need not make a monetary settlement offer. Id. The decision as to whether a party's settlement efforts indicate good faith is generally within the sound discretion of the trial court. Id., citing *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d

83, 19 OBR 123, 482 N.E.2d 1248. The burden of proof is on a party seeking prejudgment interest to establish the lack of good faith of the nonmoving party. *Kalain,* supra, at syllabus.

{¶ 34} After a thorough review of the record, we hold that the trial court followed the proper standard pursuant to R.C. 1343.03(C) and did not abuse its discretion when it denied plaintiffs' motion for prejudgment interest. As previously mentioned, this is the third occasion on which this action has come before us on appeal. In the first trial in this matter in 2002, the jury rendered a verdict in favor of the defendants. Thus, it was reasonable for White to possess a good faith, objectively reasonable belief that it had no liability. Plaintiffs merely requested that White make a settlement offer to them. Additionally, plaintiffs never made an offer to settle with White. Lastly, plaintiffs have utterly failed to establish any facts that demonstrate bad faith on the part of White. Plaintiffs have not met their burden of proof pursuant to R.C. 1343.03(C). Accordingly, the trial court did not abuse its discretion when it overruled plaintiffs' motion for prejudgment interest.

{¶ 35} Plaintiffs' final assignment of error is overruled.

### White's Cross–Appeal

### V

{¶ 36} White's first assignment of error is as follows:

{¶ 37} "The trial court erred in denying the motion to strike the testimony of expert Bernard Doran."

{¶ 38} In its first assignment of error, White contends that the trial court erred when it overruled the motion to strike the testimony of plaintiffs' expert, Bernard Doran. Initially, White asserts that Doran's opinions were unreliable because he was not competent to testify as an expert in manufacturing defects. White further asserts that Doran's testimony should have been stricken because he had failed to test his hypothesis. Lastly, White argues that Doran's opinions were unreliable because he did not offer them within a reasonable degree of scientific certainty.

{¶ 39} The trial court has broad discretion in determining the admissibility of expert testimony, and we may reverse only if the trial court abused its discretion. See *Kumho Tire Co. v. Carmichael* (1999), 526 U.S. 137, 152–153, 119 S.Ct. 1167, 143 L.Ed.2d 238. In general, courts should admit expert testimony whenever it is relevant and satisfies Evid.R. 702. *State v. Nemeth* (1998), 82 Ohio St.3d 202, 207, 694 N.E.2d 1332. Thus, the trial court must perform a "gatekeeping" role to insure that expert testimony is sufficiently (a) relevant and (b) reliable to justify its submission to the jury. *Daubert v. Merrell Dow Pharma-*

*ceuticals, Inc.* (1993), 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469. In performing this role, the trial court must follow Evid.R. 702, which states:

{¶ 40} "A witness may testify as an expert if all of the following apply:

{¶ 41} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

{¶ 42} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

{¶ 43} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

{¶ 44} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

{¶ 45} "(2) The design of the procedure, test, or experiment reliably implements the theory;

{¶ 46} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."

{¶ 47} In order to qualify as an expert, the witness need not be the best witness on the subject. *Scott v. Yates* (1994), 71 Ohio St.3d 219, 221, 643 N.E.2d 105. The expert must demonstrate some knowledge on a particular subject that is superior to that an ordinary juror possesses. Id., citing *State Auto Mut. Ins. Co. v. Chrysler Corp.* (1973), 36 Ohio St.2d 151, 160, 65 O.O.2d 374, 304 N.E.2d 891.

{¶ 48} The first issue in White's motion to strike concerns whether Doran was qualified to present expert testimony on the manufacturing-defect claim. Doran's testimony clearly established his qualifications in the field of fire investigation and forensic engineering. Doran also earned a bachelor's degree in physics and has been a licensed professional engineer in Ohio since 1969. Doran further testified that he has an associate's degree in electronic engineering. Moreover, his testimony dealt with a complex area of expertise of which a lay person would commonly have no knowledge. Thus, the requirements of Evid.R. 702(A) and (B) have been satisfied, and our review is focused solely upon the reliability of Doran's testimony pursuant to Evid.R. 702(C).

{¶ 49} From Doran's qualifications and testimony, it is clear that Doran was competent to provide reliable testimony with respect to plaintiffs' manufacturing-

defect claim. Although Doran conceded that he was not an expert in the manufacture of electrical stoves, his background in electrical and forensic engineering provided him with the requisite expertise necessary to opine concerning the cause and origin of the fire in the stove, which he unequivocally stated was an electrical fault in the switch.

{¶ 50} Next, White argues that the motion to strike Doran's testimony should have been granted because he had failed to test his hypothesis that the fire had originated in the switch as a result of an electrical fault that ignited contaminants that entered the switch through holes in the back of the switch itself. White contends that Doran's failure to perform any physical testing utilizing exemplar switches in order to approximate the alleged cause of the fire in the stove should have disqualified him as an expert in the case. We disagree.

{¶ 51} When questioned concerning his failure to perform physical testing, Doran stated:

{¶ 52} "Q: Okay. And what you're telling us is that the NFPA 921, the current condition of the guide put forth by an organization to which you are a member recommends that fire cause and origin investigators utilize the scientific method. Is that what you are telling us?

{¶ 53} "A: Wait a minute. Scientific method is different than empirical testing. Testing, as they define it, can simply be a thought process, a thinking through of the evidence presented and evaluated mentally in arriving at a conclusion. It doesn't necessarily mean buy a hundred stoves or switches or other items and testing them for years on end."

{¶ 54} With respect to the procedure he followed, Doran testified that he took the subject stove apart and compared the failed switch with an exemplar switch that he also dismantled. Based on his knowledge and experience as a fire investigator and forensic engineer, Doran concluded that the fire had begun in the switch. After listening to arguments from both parties, the trial court found that Doran's failure to test, while going to the weight of his testimony, was not determinative on the issue of its admissibility. Even White concedes in its brief that Doran's failure to perform that testing was not determinative with respect to the admissibility of his testimony. Thus, the jury was left to decide how reliable Doran's testimony was, in light of his failure to perform physical testing with exemplar switches like the one in the subject stove. Accordingly, the trial court did not abuse its discretion in this regard.

{¶ 55} Lastly, White argues that Doran's testimony should be stricken because it was not offered within a reasonable degree of scientific certainty. White asserts that Doran "established nothing more than that his theory was merely a possibility." We disagree.

{¶ 56} During the direct examination of Doran, the following exchange occurred:

{¶ 57} "Q: Mr. Doran, I would like to ask you a couple of questions. Any time in this testimony that you're asked to express an opinion, I'd like you to express that opinion to a reasonable degree of engineering probability as the standard. Can we agree to that?

{¶ 58} "A: Yes, of course."

{¶ 59} White points out that Doran testified that contaminants entering through holes in the back of the switch were the probable cause of the electrical fault that, in turn, caused the fire in the stove. White argues that the trial court should have excluded that testimony because Doran could not explain the exact nature of the alleged electrical fault to any degree of certainty. However, Doran testified that absent a manufacturing defect in the switch, the fire would not have occurred. This is evident in the following exchange:

{¶ 60} "Q: We'll get to that in a minute. I want to ask you if you have an opinion as to whether or not that switch had an electrical defect there?

{¶ 61} "Q: (Defense Counsel) Objection. Lack of foundation.

{¶ 62} "The Court: Overruled. Go ahead.

{¶ 63} "A: One would infer that the switch was defective in manufacture as it failed.

{¶ 64} " * * *

{¶ 65} "Q: Is there any question in your mind that there was an electrical failure in that switch?

{¶ 66} "A: No. None whatsoever.

{¶ 67} "Q: No question.

{¶ 68} "A: No.

{¶ 69} "Q: And did the electrical failure in the switch cause the fire at the Nearon house?

{¶ 70} "A: Yes, sir."

{¶ 71} In light of the foregoing testimony, it is clear that Doran expressed his opinions concerning the origin and cause of the fire within a reasonable degree of scientific certainty. Thus, it was not an abuse of discretion for the trial court to overrule White's motion to strike the testimony of plaintiffs' expert, Bernard Doran.

{¶ 72} White's first assignment of error is overruled.

## VI

{¶ 73} White's second assignment of error is as follows:

{¶ 74} "The trial court erred in denying the motion for directed verdict and motion for judgment notwithstanding the verdict on the manufacturing defect claim."

{¶ 75} In its second assignment, White contends that the trial court erred when it denied its motions for directed verdict and JNOV with respect to plaintiffs' manufacturing-defect claim. Specifically, White argues that plaintiffs presented no evidence that the range had been manufactured defectively. White also asserts that plaintiffs presented no evidence that the alleged defect was present when the stove left White's control. Lastly, White argues that plaintiffs presented insufficient evidence that the alleged defect was the cause of the damage.

{¶ 76} A product is defective in manufacture or construction if, when it leaves the control of its manufacturer, it deviates in a material way from the design specifications, formula, or performance standards of the manufacturer, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards. R.C. 2307.74. A product may be defective in manufacture or construction even if its manufacturer has exercised all possible care in its manufacture or construction. Id.

{¶ 77} In manufacturing-defect cases, evidence of unsafe, unexpected performance of a product is sufficient to infer existence of defect. *State Farm Fire & Cas. Co. v. Chrysler Corp.* (1988), 37 Ohio St.3d 1, 523 N.E.2d 489. However, that evidence must be accompanied by proof that the alleged defect was present when the product left the hands of the manufacturer and that it proximately caused the plaintiff's injuries. Id.

{¶ 78} In the instant case, plaintiffs presented evidence through the testimony of their expert, Doran, that the electric stove manufactured by White was the source of the fire that had burned down the Nearons' residence. As previously stated, Doran testified at length that the origin of the fire was the left-hand control switch on the stove and that an electrical failure inside the switch caused the fire. Doran also testified that one could infer the existence of a manufacturing defect in the switch because it had failed.

{¶ 79} With respect to the element of proximate causation, Doran provided unequivocal testimony that the failure of the switch had caused the fire. He testified that heat from the failed switch had ignited the insulation on wires near the switch and that the fire had then spread to wood paneling behind the stove. That the fire was caused by the switch in the stove is further evidenced by the

testimony of White's expert, John Heltman, who agreed that fire patterns on the back panel of the range indicated that hot gas trapped inside the panel left the rear of the panel through vents on the back of the stove. Plaintiffs argued at trial that this demonstrates that the fire had originated in the back of the stove where the failed switch was located. Thus, sufficient evidence was adduced at trial to demonstrate that the faulty switch in the stove was the proximate cause of the fire.

{¶ 80} Lastly, plaintiffs provided sufficient evidence that the defect in the switch was present when the product left the hands of the manufacturer, White. Absent substantial change in the condition in which the product was sold, it may be inferred that the defect was present when it left the hands of the manufacturer. *State Farm Fire & Cas. Co.*, 37 Ohio St.3d 1, 523 N.E.2d 489. This can be established by demonstrating that the product was not tampered with. *Atkins v. Gen. Motors Corp.* (1999), 132 Ohio App.3d 556, 725 N.E.2d 727, citing *McDonald v. Ford Motor Co.* (1975), 42 Ohio St.2d 8, 11, 71 O.O.2d 4, 326 N.E.2d 252, 254.

{¶ 81} At trial, Susan Nearon testified that in the 18 months after she had purchased the electric stove, no repairs were made to the product, nor had anyone tampered with the switch that was ultimately found to have caused the fire. Additionally, Doran testified that the stove had been manufactured in such a way that the faulty switch was obscured by the back panel of the stove. Mrs. Nearon testified that to her knowledge, the back panel of the stove had never been removed. Clearly, plaintiffs presented sufficient circumstantial evidence from which it could be inferred that the range was in the same condition as when it was first assembled. Thus, the trial court did not err when it denied White's motion for directed verdict and JNOV with respect to plaintiffs' manufacturing defect claim.

{¶ 82} White's second assignment of error is overruled.

## VII

{¶ 83} White's final assignment of error is as follows:

{¶ 84} "The trial court erred in denying the motion for a new trial."

{¶ 85} In its final assignment, White contends that the trial court abused its discretion when it overruled the motion for new trial. Specifically, White argues that the jury verdict in favor of Donegal, the Nearons' insurer, is contrary to law because Donegal failed to bring suit in its own name as the real party in interest before the two-year statute of limitations had expired. We disagree.

{¶ 86} As previously mentioned, the Nearons commenced the initial action against White in May 1997. On May 11, 1999, the Nearons voluntarily dismissed

their claims against White. On May 11, 2000, the Nearons refiled their action, with Donegal joined as a coplaintiff. It is undisputed that Donegal had paid the Nearons approximately $141,193.22 to repair their home and replace its contents.

{¶ 87} White argues that pursuant to R.C. 2305.10(A), Donegal is barred by the statute of limitations from litigating the instant matter because, as the real party in interest, Donegal should have asserted its claims in the first filing of this case or within two years after the cause of action arose. In support of this contention, White cites the Ohio Supreme Court case *Shealy v. Campbell* (1985), 20 Ohio St.3d 23, 20 OBR 210, 485 N.E.2d 701, which held that when an insurer has paid all damages on behalf of its insured, the insurer becomes the real party in interest and must bring suit in its own name.

{¶ 88} Because Donegal did not enter the litigation until May 11, 2000, well after the statute of limitations had expired, White contends that it is barred from doing so now. White argues that the jury's verdict in favor of Donegal was contrary to law and that the trial court should have granted White a new trial based on the claims of the Nearons. We disagree.

{¶ 89} In *Holibaugh v. Cox* (1958), 167 Ohio St. 340, 4 O.O.2d 461, 148 N.E.2d 677, the Ohio Supreme Court held that when part, but not all, of an insured's claim has been paid by the insurer, the insurer may be properly joined as a party if the insured's action was timely with respect to the statute of limitations. We have a similar situation in the case before us. The Nearons assert, and White does not dispute, that although Donegal paid them approximately $141,193.22, their claims were not fully paid. Consequently, the Nearons remained the real party in interest. We agree with the trial court that the claims of Donegal were derivative claims that could be pursued on behalf of the Nearons but only to the extent of its subrogation interest. Because the Nearons voluntarily dismissed their action on May 11, 1999, they were required to refile by May 11, 2000. When the Nearons refiled on that date within the statute of limitations, Donegal was properly joined as a coplaintiff in the action. Thus, the trial court did not abuse its discretion when it denied White's motion for new trial.

{¶ 90} White's final assignment of error is overruled.

## VIII

{¶ 91} Plaintiffs' first assignment of error having been sustained, the judgment of the trial court granting White's JNOV with respect to plaintiffs' claim for design defect is reversed, and the jury's verdict finding for plaintiffs in that regard is hereby reinstated. Additionally, plaintiffs' second assignment of error is rendered moot, and the jury's original verdict awarding a total of $104,000 to plaintiffs is reinstated. Plaintiffs' third and final assignment of error, as well as

each of White's assignments in its cross-appeal, are hereby overruled in their entirety, and the judgment of the trial court is affirmed in those respects.

Judgment reversed in part
and affirmed in part.

WOLFF and FAIN, JJ., concur.