RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0089p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

NEWELL RUBBERMAID, INC.,
　　　　　　　　　*Plaintiff-Appellant,*

　　　*v.*

THE RAYMOND CORPORATION,
　　　　　　　　　*Defendant-Appellee.*

No. 10-3912

_____

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 08-02632—Sara E. Lioi, District Judge.

Argued: January 18, 2012

Decided and Filed: April 3, 2012

Before: BATCHELDER, Chief Judge; CLAY and GILMAN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Matthew M. Nee, Lakewood, Ohio, for Appellant. Raymond D. Jamieson, QUARLES & BRADY LLP, Milwaukee, Wisconsin, for Appellee. **ON BRIEF:** Matthew M. Nee, Lakewood, Ohio, Nicholas A. Panagopoulos II, Cleveland, Ohio, for Appellant. Raymond D. Jamieson, Patrick W. Schmidt, QUARLES & BRADY LLP, Milwaukee, Wisconsin, Harry T. Quick, BRZYTWA QUICK & McCRYSTAL LLC, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

　　RONALD LEE GILMAN, Circuit Judge. Newell Rubbermaid, Inc. (Newell) filed this subrogation action to hold The Raymond Corporation (Raymond) liable for workers' compensation benefits that Newell paid its employee, Jean Hashman, after she sustained injuries in a forklift accident at work. Raymond had designed and

1

manufactured the forklift.  Newell asserts that a design defect—the failure to include a rear guard door on the forklift—caused Hashman's injuries when her left foot slipped out of the operator compartment and was crushed between the forklift and a warehouse structure.

In the district court, Raymond filed a motion to exclude the testimony of Newell's expert witness and a motion for summary judgment.  Both motions were granted.  The court concluded that the methods used by the proposed expert were not sufficiently reliable to support his proferred opinions.  As a result, the court granted summary judgment for Raymond, determining that Newell could not sustain a design-defect claim without expert testimony.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

In December 2004, Hashman worked at a Newell facility in Ohio.  One of her regular duties was to drive a Dockstocker forklift manufactured by Raymond.  The Dockstocker was designed with an "open" compartment in which the operator stands (i.e., the forklift has no seat).  Nor did it have a rear guard door.  Raymond sells separate rear guard doors, intended to prevent items on the warehouse floor from protruding into the operator compartment, but Newell did not purchase this component for its Dockstocker.  Notably, the industry standards developed by the American National Standards Institute/American Society of Mechanical Engineers (ANSI/ASME) do not mandate that manufacturers include a rear guard door as a standard feature on forklifts.

Before beginning her shift on December 23, 2004, Hashman completed the required safety check and found nothing wrong with the Dockstocker.  Later that day, while driving toward a "robot cage" with the operator compartment facing forward, Hashman attempted to brake by "plugging" the forklift; i.e., manually reversing the direction in which the forklift was traveling.  But the Dockstocker did not immediately stop.  Hashman testified in her deposition that she "got scared" and "stepped off" the

Dockstocker, but other evidence in the record suggests that Hashman instead lost her balance and slipped out of the operator compartment.

In any event, Hashman's left foot became trapped between the forklift and the robot cage, causing serious injuries that ultimately resulted in a partial amputation. Hashman sued Newell for workers' compensation benefits in 2006, and Newell settled the claim. Newell's investigation report found no fault with the Dockstocker's brakes or its design, and instead directed the blame toward Hashman's poor training and the conditions in the warehouse. But Newell now asserts that Hashman's foot would not have left the operator compartment had Raymond equipped its Dockstocker with a standard-issue rear guard door, a safety feature about which Raymond has been aware since at least 1961.

In November 2008, Newell filed the present complaint against Raymond, alleging a design-defect claim under Ohio's products liability law, as well as several other claims. Under Ohio law in effect at the time of Hashman's accident, Newell was entitled to proceed simultaneously under two distinct theories of liability for a design defect: (1) risk-benefit, and (2) consumer-expectations. *See* Ohio Rev. Code § 2307.75(A) (2001) (amended 2005). (The statute has since been amended to remove the consumer-expectations theory, but Raymond concedes that the earlier version with both tests is the appropriate version to apply in the present case.) The complaint did not select a specific theory of design-defect liability.

Newell offered the testimony of Benjamin T. Railsback to support its claims. Railsback, a forensic engineer with no experience in driving a Raymond forklift and only limited experience in driving forklifts from other manufacturers, opined that the Dockstocker was defectively designed because it did not have a rear guard door to prevent the operator's feet from accidentally leaving the operator compartment. Raymond moved to exclude Railsback's testimony.

At the same time, Raymond moved for summary judgment, arguing that Newell had failed to adequately support its design-defect claim. Newell responded with Railsback's report, deposition testimony from Raymond's experts, and deposition

testimony from eyewitnesses to the accident. It also argued that summary judgment was inappropriate because Raymond had failed to demonstrate the absence of a genuine dispute on the consumer-expectations theory, a theory not addressed in Raymond's brief. But Newell did not support this latter argument with any evidence of its own that would support a genuine dispute as to consumer expectations regarding the Dockstocker.

The district court granted Raymond's motion to exclude Railsback's testimony. It concluded that Railsback did not have sufficient training or experience with forklifts to qualify him as an expert witness, that his testimony was not relevant because it involved different models of forklifts than the one at issue in the present case, and that his methods of extrapolating from anecdotal evidence and his failure to test his proposed alternative designs rendered his opinion unreliable.

The district court then granted Raymond's motion for summary judgment. It ruled that, under applicable Sixth Circuit precedent, Newell could not support its risk-benefit theory of design defect without expert testimony. The court similarly concluded that expert testimony was necessary to support Newell's consumer-expectations theory. It so ruled based on this court's opinion in *Brown v. Raymond Corp.*, 432 F.3d 640, 646 (6th Cir. 2005), where we held under Tennessee law that a forklift was a complex mechanism requiring expert testimony to support both types of design-defect claims. The district court applied this requirement to Newell's claim under Ohio law, concluding that Newell was unable to meet its burden under the consumer-expectations theory.

Newell has timely appealed. It seeks reversal of the district court's decision granting Raymond's motions to exclude Railsback's testimony and for summary judgment.

## II. ANALYSIS

### A.      Standard of review

We review de novo a district court's grant of summary judgment. *ACLU of Ky. v. Grayson Cnty., Ky.*, 591 F.3d 837, 843 (6th Cir. 2010). Summary judgment is proper where no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

With respect to the admissibility of expert testimony, we apply the abuse-of-discretion standard. *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 258 (6th Cir. 2001). "A district court abuses its discretion if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Brown*, 432 F.3d at 647 (internal quotation marks omitted).

### B.      Exclusion of Newell's expert witness

#### 1.      *Applicable law*

Newell first argues that the district court erroneously excluded the testimony of Railsback, its expert witness. The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. At the time of trial, Rule 702 provided:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 (2010) (amended December 1, 2011 for stylistic reasons only, *see* cmt. 2011 amends.).

A district court's task in assessing evidence proffered under Rule 702 is to determine whether the evidence "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). One key consideration is "whether the reasoning or methodology underlying the testimony is scientifically valid." *Id.* at 592-93. The inquiry is "a flexible one," and "[t]he focus . . . must be solely on principles and methodology, not on the conclusions they generate." *Id.* at 594-95. An expert who presents testimony must "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Although there is no "definitive checklist or test" for meeting this standard, *Daubert* set forth a number of factors that typically "bear on the inquiry." 509 U.S. at 593. These include whether the theory or technique in question "can be (and has been) tested," whether it "has been subjected to peer review and publication," whether it has a "known or potential rate of error," and whether the theory or technique enjoys "general acceptance" in the "relevant scientific community." *Id.* at 593-94 (internal quotation marks omitted). Red flags that caution against certifying an expert include reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity. *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 177 (6th Cir. 2009). In addition, if a purported expert's opinion was prepared solely for litigation, that may also be considered as a basis for exclusion. *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434 (6th Cir. 2007).

The use of an expert witness in a forklift design-defect case was previously before this court in *Brown*, where the panel upheld the decision of the district court to exclude the expert's opinion. In *Brown*, the expert witness failed to present or test any alternative forklift designs and could not speak to the comparative risks or benefits of the various designs. The district court noted that "the design of industrial equipment is a complex process and changes to prevent one problem could create other problems, thus

increasing the overall danger of using a product." *Brown v. Raymond Corp.*, 318 F. Supp. 2d 591, 599 (W.D. Tenn. 2004), *aff'd*, 432 F.3d 640 (6th Cir. 2005).

In affirming *Brown*, this court relied heavily on *Dhillon v. Crown Controls Corp.*, 269 F.3d 865 (7th Cir. 2001), where the Seventh Circuit excluded an expert witness's testimony because the expert had not designed forklifts of the model at issue in that case or performed the "crucial" tests on alternative designs that were necessary for considering "product- and manufacturer-specific" issues. *Id.* at 870. Based on *Dhillon*, this court concluded that the expert witness's failure to provide evidence of testing on his alternative design justified the district court's ruling to exclude the testimony. *Brown*, 432 F.3d at 647-48.

### 2.    *Analysis*

Raymond initially argues that Railsback is not qualified to serve as an expert because he is employed as a forensic engineer, meaning that his work product was necessarily prepared for litigation. But we question whether employment alone should bar Railsback from testifying as an expert witness, since forensic *scientists*—professionals in a field similar to Railsback's—are frequently considered qualified to testify at trial. *See, e.g.*, *United States v. Wilson*, 385 F. App'x 497, 499 (6th Cir. 2010) (describing testimony from a forensic scientist about processing gunshot residue); *United States v. McPhearson*, 303 F. App'x 310, 312 (6th Cir. 2008) (highlighting a forensic scientist's testimony as an expert in chemistry); *United States v. Frost*, 182 F.3d 919 (table), 1999 WL 455434, at *3 (6th Cir. June 24, 1999) (unpublished opinion) (discussing a forensic scientist's expert opinion about marijuana-growing equipment). We need not decide this issue, however, because even if Railsback was qualified to serve as an expert, the district court did not abuse its discretion when it determined that his methodology was not sufficiently reliable to allow his testimony.

Railsback's report was comprehensively evaluated by the district court. The court concluded that

> Railsback's methods are clearly not scientifically sound. He merely counts accidents from accident reports relating to non-Raymond forklifts. Without questioning or verifying the data and without conducting any tests of his own . . . , he reaches conclusions about the forklift involved in this case. Furthermore, although . . . he opines that a latching or spring-loaded rear door is necessary to make this forklift safe and that such a modification would be technically and economically feasible, he never actually tested either of these alternative designs.

*Newell Rubbermaid, Inc. v. Raymond Corp.*, No. 5:08CV2632, 2010 WL 2643417, at *6 (N.D. Ohio July 1, 2010) (unpublished opinion) (footnotes omitted, ellipses added). In this short paragraph, the district court identified at least four red flags in Railsback's methodology: anecdotal evidence, improper extrapolation, failure to consider other possible causes, and, significantly, a lack of testing. These concerns have been deemed sufficient to warrant exclusion in prior cases. *See, e.g.*, *Best*, 563 F.3d at 177-78; *Brown*, 432 F.3d at 647-48; *Dhillon*, 269 F.3d at 869-70.

In response to the district court's opinion, Newell argues on appeal that the only evidence available to Railsback was anecdotal in nature. Perhaps this should have been an indication to Newell that it needed a different expert. In any event, Newell has not attempted on appeal to clarify Railsback's testing methodology or the evidence supporting his position that a rear guard door would have prevented the injury here. In addition, Newell does not dispute Raymond's assertion that Railsback's expert opinion favoring a rear guard door runs contrary to industry standards.

The district court's extensive discussion of the problems posed by Railsback's report is well supported. Newell has failed on appeal to show an abuse of discretion that would call into question the decision to exclude Railsback as an expert witness. We therefore find no abuse of discretion in the district court's ruling on this issue.

## C.     Design-defect claim

The version of Ohio's products liability law that applies to the present case—a legal issue that the parties do not dispute, despite subsequent amendments to the statute—provides as follows:

(A)　　. . . [A] product is defective in design or formulation if either of the following applies:

(1)　　When it left the control of its manufacturer, the foreseeable risks associated with its design or formulation as determined pursuant to division (B) of this section exceeded the benefits associated with that design or formulation as determined pursuant to division (C) of this section;

(2)　　It is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

Ohio Rev. Code § 2307.75(A) (2001) (amended 2004).

This statute offers two alternative approaches for demonstrating a design defect: a risk-benefit test in subsection (A)(1), and a consumer-expectations test in subsection (A)(2). *See Perkins v. Wilkinson Sword, Inc.*, 700 N.E.2d 1247, 1248 (Ohio 1998) (explaining that "these standards are not mutually exclusive, but instead constitute a single, two-pronged test for determining whether a product is defectively designed" (internal quotation marks omitted)); *see also Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 454 (6th Cir. 2000) (describing the tests as "not fungible," and noting that "a finding under one test does not imply a similar finding under the other test"). A jury may consider either or both theories of liability. *Perkins*, 700 N.E.2d at 1248 ("[I]f the jury concludes that one standard is not met, the jury may consider the other standard." (internal quotation marks omitted)); *Hisrich*, 226 F.3d at 454 (interpreting Ohio law to allow both theories in a case involving the safety of an automobile airbag that killed a six-year-old passenger after deploying during a low-speed collision).

Under the risk-benefit theory, a court weighs the existing design's foreseeable risks against its benefits, as determined by a nonexclusive statutory list of factors. *Clay v. Ford Motor Co.*, 215 F.3d 663, 669-70 (6th Cir. 2000) (applying this test in a case involving a car accident where a sport utility vehicle rolled over). Newell concedes that Ohio law requires expert testimony where aspects of the defect or the proposed alternative designs are technically complex and outside the understanding of a lay juror.

*See Atkins v. Gen. Motors Corp.*, 725 N.E.2d 727, 733 (Ohio Ct. App. 1999) (explaining that expert testimony is "often . . . necessary," particularly where the product at issue is complex, but that such testimony was not necessary in a case where a van's side door closed on a passenger's hip because the product and the alleged defect were not overly complex); *see also Aldridge v. Reckart Equip. Co.*, No. 04CA17, 2006 WL 2716696, at *18 (Ohio Ct. App. Sept. 19, 2006) (unpublished opinion) (per curiam) (relying on *Atkins* to reject the defendant's argument that expert testimony was required and to conclude instead that "expert testimony may be required if the existence of a technically feasible alternative design is knowledge beyond that possessed by the average lay person").

Under the consumer-expectations theory, a product may be defectively designed if "[i]t is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." Ohio Rev. Code § 2307.75(A)(2) (2001) (amended 2004); *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 901-02 (6th Cir. 2004) (discussing the requirements of the consumer-expectations test in light of a jury-instruction challenge); *Bouher v. Aramark Servs., Inc.*, 910 N.E.2d 40, 43 (Ohio Ct. App. 2009) (rejecting a consumer-expectations claim alleging a design defect in a coffee maker that allegedly boiled water too hot). This test examines "what would be contemplated by the ordinary consumer who purchases [the product], with the ordinary knowledge common to the community as to its characteristics." *Hisrich*, 226 F.3d at 454-55 (internal quotation marks omitted). "[T]he determination of whether a product is more dangerous than an ordinary person would expect is generally a question of fact which does not require expert testimony." *Id.* at 455 (internal quotation marks omitted).

Neither this court nor the Ohio state courts have required the consumer to have technical knowledge or a specialized background under the consumer-expectations theory, as long as the consumer has "an expectation in the normal operation and safety" of the product. *See id.* at 455, 456 ("[T]he issue is not whether the consumer can determine the reasonable expectations for the technical operation of the product, but the consumer's reasonable ability to expect the performance of the product."). We have

found no case holding that Ohio's consumer-expectations test is inapplicable to complex devices, and this court has previously been "unpersuaded" by such an argument. *See id.* at 456. But the Ohio Supreme Court has cautioned that a plaintiff might not succeed on a consumer-expectations theory if the relevant product is one about which consumers are "ignorant." *Id.* at 455-56 (discussing *Knitz v. Minster Mach. Co.*, 432 N.E.2d 814, 818 (Ohio 1982)).

Ohio caselaw is less than clear about the evidence needed to support a consumer-expectations claim at the summary-judgment stage. On the one hand, the plain language of the statute and Ohio's pattern jury instructions, as well as several cases applying Ohio law, seem to require that a plaintiff supply evidence depicting the expectations that consumers hold about the contested product. *See Lawrence v. Raymond Corp.*, No. 3:09 CV 1067, 2011 WL 3418324, at *9 (N.D. Ohio Aug. 4, 2011) (unpublished opinion) (dismissing the plaintiffs' claim because they "failed to present any evidence of the expectations of normal consumers (users) [of] any type of forklift"); 3 Ohio Jury Instructions § 351.09(2)(C) (2002), *as quoted in Tompkin*, 362 F.3d at 902 n.19. This evidence should demonstrate "'whether ordinary consumers are aware of the [product's] alleged dangers,'" not simply "'what the [victim] would have expected.'" *Lawrence*, 2011 WL 3418324, at *9 (brackets added, ellipses and emphasis omitted) (quoting *Jordan v. Paccar, Inc.*, 37 F.3d 1181, 1184 (6th Cir. 1994)) (determining that the plaintiffs could not rely solely on the victim's specific expectations or the expectations of the jury as general consumers).

But other cases concurrently maintain that "'evidence of unsafe, unexpected product performance is sufficient to infer the existence of a product defect' under . . . the consumer-expectation standard," even without further evidence. *Hisrich*, 226 F.3d at 455 (quoting *State Farm Fire & Cas. Co. v. Chrylser Corp.*, 523 N.E.2d 489, 494-95 (Ohio 1988), *superseded by subsequent amendments to* Ohio Rev. Code § 2307.75); *see also Tompkin*, 362 F.3d at 901-02 (concluding that the district court's refusal to instruct the jury on the consumer-expectations theory was harmless because the plaintiff's unexpected-performance argument was "virtually indistinguishable" from her implied-

warranty claim, on which the court did provide instructions (internal quotation marks omitted)); *Donegal Mut. Ins. Co. v. White Consol. Indus., Inc.*, 852 N.E.2d 215, 221 (Ohio Ct. App. 2006) (holding that the plaintiffs presented sufficient evidence of unexpected performance where they alleged that their stove started a fire when set on the self-clean mode). But regardless of which standard of proof the court applies, the Ohio Court of Appeals has determined that the mere fact of injury—without evidence of errant performance or contrary consumer expectations—is insufficient to support a design-defect claim. *Bouher*, 910 N.E.2d at 43.

In addition to meeting at least one of the two design-defect theories, Newell must show that the proposed alternative design would be reasonable in light of the full range of potential forklift accidents. *See Francis v. Clark Equip. Co.*, 993 F.2d 545, 552 (6th Cir. 1993). *Francis* involved a claim that the forklift in question should have had an operator-restraint system to hold operators in the vehicle in the event that it flipped over. *Id.* at 551-52. This argument, the court concluded, "necessarily entails aspects of a risk-benefit analysis," despite the claim's origin under the consumer-expectations theory, because the factfinder was tasked with evaluating the allegedly reasonable alternatives. *Id.* at 551 (presuming that an alternative design would prevent some injuries, the court noted that "the jury must also consider the feasibility and effectiveness of seat belts in light of other accidents that can occur in forklifts," which "necessarily entails a discussion of whether the adoption of the alternative design would have affected the safety of the driver in [other types of] forklift accidents . . . [or] adversely affected the driver's ability to perform his or her job." (brackets and ellipses added)).

Finally, for Newell's claims to survive summary judgment, it must demonstrate "that the allegedly defective condition was the most probable cause of [Hashman's] injuries or losses." *See Donegal Mut.*, 852 N.E.2d at 221. Circumstantial evidence of causation is sufficient, and Newell need show only that its hypothesis is more probable than other potential causes. *See Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 486 (6th Cir. 2008) (holding, in a case based on Tennessee law, that the plaintiff's claim of design defect in an automobile airbag could withstand summary judgment based on

circumstantial evidence alone); *Donegal Mut.*, 852 N.E.2d at 221 (applying this rule to the causation element of a design-defect claim under Ohio law). Expert testimony about the exact nature of the defect is not necessary, as long as the evidence sufficiently points to the defective component in general as the cause of injury. *Id.* at 221 (determining that the expert did not need to testify about the exact part of the electrical switch that caused the fire because the evidence was sufficient to allow the jury to conclude that the switch in general had been defectively designed).

**D.     The summary-judgment decision**

### 1.     *Risk-benefit theory*

Newell admits in its appellate brief that Ohio law requires expert testimony to support the risk-benefit theory of design defect in the present case, and it bases its arguments concerning the viability of this theory solely on Railsback's testimony. Because the district court did not abuse its discretion in excluding Newell's only expert and because Newell has offered no other evidence to support its risk-benefit theory, the district court did not err in granting summary judgment in favor of Raymond on this theory.

### 2.     *Consumer-expectations theory*

#### a.     *Newell did not waive this theory*

Raymond first argues that Newell waived this issue by failing to develop the consumer-expectations theory in the district court. This argument is based on the fact that none of the documents filed by Newell in the district court—including the complaint—specified a theory of design defect. Raymond in turn chose just one theory (risk-benefit) on which to focus its summary-judgment attack, a fact that Newell pointed out in its responsive brief. Now Raymond argues that, in order to withstand waiver, Newell was obligated to demonstrate a genuine dispute as to all theories of design defect that Newell chose to advance.

Raymond's argument, however, goes to the propriety of the district court's grant of summary judgment, not to the issue of waiver, and will be addressed below. In its responsive brief to Raymond's motion, Newell adequately indicated that it planned to pursue the consumer-expectations theory in addition to the risk-benefit theory, and the district court considered the merits of both theories before granting summary judgment. We thus conclude that Newell has not waived this argument.

### b.     *The consumer-expectations theory does not require expert testimony under Ohio law*

In *Brown v. Raymond Corp.*, 432 F.3d 640 (6th Cir. 2005), this court held that, under Tennessee law, a plaintiff must provide expert testimony to sustain a design-defect claim involving a "complex" product "about which a consumer would have no expectations," and that Tennessee's consumer-expectations test does not apply to complex products. *Id.* at 644, 647 (internal quotation marks omitted). Newell argues that the district court erred in applying *Brown*'s interpretation of Tennessee law to the consumer-expectations test under Ohio's products liability law. The district court indeed reasoned that "under the teachings of *Brown*, because a forklift has been determined by the Sixth Circuit to be a complex mechanism, the consumer expectation test is inapplicable and, when applying the risk-benefit test, expert testimony is required." *Newell Rubbermaid, Inc. v. Raymond Corp.*, No. 5:08CV2632, 2010 WL 2643417, at *6 (N.D. Ohio July 1, 2010) (unpublished opinion).

But as this court clarified in *Hisrich v. Volvo Cars of North America, Inc.*, 226 F.3d 445, 456 (6th Cir. 2000), and as Raymond now admits, Ohio law does not include the distinction between complex and simple products found in Tennessee law. In addition, Ohio law generally does not require expert testimony under the consumer-expectations theory. *Id.* at 455. The district court's conclusion that Ohio's consumer-expectations test does not apply to a complex product was therefore erroneous, and Newell is not barred from raising this theory despite the exclusion of its expert.

### c.     Newell's consumer-expectations claim cannot withstand summary judgment

But the fact that Newell is not required to provide expert testimony in support of its consumer-expectations theory does not render erroneous the district court's ultimate conclusion that this claim cannot withstand Raymond's motion for summary judgment. Newell argues that it carried its summary-judgment burden by pointing out that Raymond failed to address the consumer-expectations theory in its dispositive motion. Raymond's motion does in fact appear to assume that Newell planned to proceed on the risk-benefit theory only, and Raymond's reply brief mirrors this supposition (despite warnings to the contrary in Newell's responsive brief).

Yet Raymond argues that it sought dismissal of the entire design-defect claim, not simply dismissal of the risk-benefit theory. Raymond's contention requires a somewhat strained reading of its summary-judgment brief, but this appears to be the way that both Newell and the district court interpreted the document. Because Newell and the district court interpreted Raymond's brief in this manner, we will do so as well.

Rule 56(c)(1) of the Federal Rules of Civil Procedure, amended on December 1, 2010, currently provides that

> [a] party asserting that a fact . . . is genuinely disputed must support the assertion by:
>
> (A)     citing to particular parts of materials in the record . . . ; or
>
> (B)     showing that the materials cited do not establish the absence . . . of a genuine dispute . . . .

The commentary to Rule 56 cautions that the 2010 amendments were not intended to effect a substantive change in the summary-judgment standard. In addition, the version of Rule 56 in effect at the time that the district court rendered its opinion provided that "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against this party." Fed. R. Civ. P. 56(e)(2) (July 2010) (amended Dec. 2010).

Both versions of Rule 56 require that the party seeking to avoid summary judgment must point to evidence in the record demonstrating a genuine dispute of material fact. A plaintiff cannot simply sit back and highlight deficiencies in the defendant's argument without providing some affirmative support for its own position. Yet this is precisely what Newell did here and, in so doing, Newell failed to carry its burden of opposing summary judgment.

Specifically, the record before us lacks any evidence of general consumers' expectations about the Dockstocker forklift. *See Lawrence v. Raymond Corp.*, No. 3:09 CV 1067, 2011 WL 3418324, at *9 (N.D. Ohio Aug. 4, 2011) (unpublished opinion) (requiring "evidence of the expectations of normal consumers" to support a consumer-expectations theory). An affidavit from the injured worker alone would not be sufficient to establish this element, yet this is the only source of consumer expectations apparent from the present record. *See id.* (relying on *Jordan v. Paccar, Inc.*, 37 F.3d 1181, 1184 (6th Cir. 1994), for the principle that plaintiffs cannot support their consumer-expectations claims with only the victim's or the jury's personal expectations).

The record also lacks any evidence of unexpected behavior by the allegedly defective forklift in question here. True enough, the record suggests that the forklift behaved errantly when it failed to immediately brake pursuant to Hashman's commands. But Newell claims that the defective feature of the Dockstocker's design was the lack of a rear guard door, not the lack of responsiveness in the braking system. In other words, Newell does not connect the allegedly errant behavior in the braking system to its argument that a design defect existed within the configuration of the operator compartment. *Cf. Donegal Mut. Ins. Co. v. White Consol. Indus., Inc.*, 852 N.E.2d 215, 221 (Ohio Ct. App. 2006) (involving a situation where the unexpected performance—the stove lighting on fire—was found to be related to the alleged defect in the stove's electrical wiring). Nor does Newell explain how its proposed alternative design (involving a rear guard door) would keep an operator in the operator compartment following unexpected movements by the forklift.

Finally, the record lacks any evidence about the feasibility of the proposed alternative design involving rear guard doors. *See Francis v. Clark Equip. Co.*, 993 F.2d 545, 551-52 (6th Cir. 1993) (suggesting that expert testimony as to feasibility may be important in a case involving a similar claim). This alone is sufficient to warrant summary judgment for Raymond on Newell's consumer-expectations claim.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.