NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1053n.06

Nos. 11-3935 and 11-4276

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Oct 05, 2012*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CAROL L. LAWRENCE, individually and as mother and next friend on behalf of B.J. and on behalf of M.J., | ) ) ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED |
| RAYMOND CORPORATION, | ) ) | STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF |
| Defendant-Appellee, | ) ) | OHIO |
| v. | ) ) | |
| LOWE'S HOME CENTERS, INC., | ) ) | |
| Cross-Claimant-Appellant. | ) | |

Before: ROGERS and KETHLEDGE, Circuit Judges; MARBLEY, District Judge.[*]

KETHLEDGE, Circuit Judge. Carol Lawrence injured her foot while operating a Raymond Corporation forklift. Lawrence filed suit against Raymond under Ohio law for defective design and for failure to warn. Lawrence also sued Lowe's Home Centers, Inc., for whom she was working when she was injured. Lowe's filed a subrogation claim against Raymond. The district court granted Raymond summary judgment. Lawrence and Lowe's appeal. We affirm.

---

[*]The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

I.

On April 6, 2007, Lawrence used a Raymond forklift to move a pallet of materials off of a truck at work. Lawrence backed the forklift away from the pallet after setting the pallet down. While backing away, her foot somehow left the forklift's operator compartment and was crushed between the forklift and a support column. Lawrence does not recall how the accident occurred. The last thing she remembers was driving away from the pallet.

Raymond designed the forklift that Lawrence was using so that the driver has to stand up while driving. The forklift also has an open rear entrance, which allows the user to step into and out of the forklift. Raymond manufactures a door for the forklift's rear entrance, but it must be purchased separately. The door is designed to keep objects out of the operator compartment rather than to keep them in.

Lawrence sued Raymond for compensatory and punitive damages, alleging that the forklift was defectively designed, and that Raymond did not adequately warn her of the forklift's dangers. Lawrence also sued Lowe's, which then filed a subrogation claim against Raymond. Lawrence later settled her claim against Lowe's. Lowe's subrogation claim depends entirely on Lawrence's success against Raymond.

Lawrence hired Thomas Berry, a mechanical engineer, to be an expert witness. Berry opined that all stand-up, rear-entry forklifts that lack a latching door on the operator compartment are defectively designed. According to Berry, a latching door would have prevented Lawrence's injury because her leg would have remained inside the forklift.

Raymond filed a motion in limine to exclude Berry's testimony. Raymond also filed a motion for summary judgment. The district court granted both motions.

This appeal followed.

## II.

### A.

#### 1.

Lawrence challenges the district court's grant of summary judgment to Raymond on her design-defect claim. We review the district court's summary judgment decision de novo. *Newell v. Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 526 (6th Cir. 2012).

Lawrence contends that the forklift was defective because it did not include a latching door. To prevail, Lawrence must prove that a latching door was practical, technically feasible, and that it would have prevented her injury. *See* Ohio Rev. Code § 2307.75(F); *see also Francis v. Clark Equip. Co.*, 993 F.2d 545, 552 (6th Cir. 1993). To make that showing here, Lawrence relies on two pieces of evidence. First, she notes that Raymond markets a non-latching door. But she cites no evidence to show that a non-latching door would have prevented her injury. (In fact, Lawrence argues that only a latching door would have prevented her injury.) Second, she relies on Berry's testimony that a latching door is compatible with the Raymond forklift, that its benefits outweigh its risks, and that it would have prevented her injury. But the district court excluded Berry's testimony as unreliable. Thus the question here is whether the district court was right to do so.

2.

We review for abuse of discretion a district court's decision to exclude an expert witness. *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012). "A district court abuses its discretion if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Brown v. Raymond Corp.*, 432 F.3d 640, 647 (6th Cir. 2005).

The admissibility of expert witness testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides that an expert witness can testify as to her opinion so long as "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702 (2010) (amended Dec. 1, 2011 for stylistic reasons only, *see* cmt. 2011 amends.). When considering the admissibility of an engineering expert's testimony, district courts have broad discretion to determine what factors to consider. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). A district court can also analyze more rigorously the admissibility of an expert's testimony if the expert's opinion was prepared solely for litigation. *Johnson v. Manitowoc Boom Trucks,* Inc., 484 F.3d 426, 434 (6th Cir. 2007) (collecting cases).

Here, the district court examined Berry's testimony more closely because it concluded that Berry's opinion was the result of his litigation work on other cases. The district court concluded that Berry's testimony was unreliable because it had not been tested and was not at all accepted in the relevant scientific community. *See generally Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593–94 (1993).

Lawrence argues that Berry's opinion was not prepared solely for litigation. A proposed expert's opinion is not prepared solely for litigation when the expert is "testify[ing] about matters growing naturally and directly out of research [he] ha[s] conducted independent of litigation." *Johnson*, 484 F.3d at 325. Here, Berry testified that his knowledge of and experience with forklift operation and design is almost all the result of his work as a consultant in forklift-accident cases. Berry formed his opinion regarding the need for latching doors in 1990 after he tried to put one on a forklift. At the time, Berry was working for an engineering firm that consulted on forklift-accident litigation. Berry's testimony demonstrates that he conducts very little non-litigation-related research. The district court's conclusion that Berry was a "quintessential expert for hire" was not clearly erroneous.

Lawrence next argues that Berry's opinion was reliable. She first contends that Berry adequately tested his latching-door theory. In forklift design-defect cases, an expert must test a proposed alternative design and be able to speak to the design's comparative benefits and risks. *See Newell Rubbermaid*, 676 F.3d at 527–28. Here, Berry only tested his latching-door design once. But that test was on a different manufacturer's straddle-type fore-aft forklift (in which the operator can either face forwards or backwards). The Raymond forklift Lawrence was using was a counterbalanced, side-stance forklift (in which the operator faces sideways). The test Berry conducted therefore did not address the "product- and manufacturer-specific" issues with his alternative design, such as whether the latching-door design is compatible with the Raymond forklift; the impact a latching door would have on maintaining a Raymond forklift; or what effect, if any, a latching door would have on the forklift's price. *See Id.* at 528; *see also Dhillon v. Crown Controls*

*Corp.*, 269 F.3d 865, 870 (7th Cir. 2001) (listing the factors an expert should consider when deciding whether an alternative design is possible).

Moreover, Berry's test did not demonstrate his design's comparative benefits and risks. The purpose of the test was to disprove the generally accepted view that latching doors are more dangerous because they delay an operator's exit during the two most common type of forklift accidents—tip-over and off-the-dock. During the test, Berry remained in the operator compartment of a forklift while it was tipped 90 degrees onto a concrete floor. According to Berry, his lack of injury demonstrated that when a forklift tips over, an operator is safest within the forklift, making the increased exit time caused by a latching door irrelevant. But Berry did not perform an off-the-dock test. And he conceded that tests showed that the presence of a latching door actually creates a safety hazard by increasing the amount of time it takes for an operator to exit the forklift. We agree with the district court that Berry's theory regarding latching doors was insufficiently tested.

Finally, Lawrence argues that the district court erred by excluding Berry's testimony on the ground that his conclusion was not generally accepted. Lawrence contends the court should have instead considered whether the methodology Berry used was generally accepted. But the district court correctly found that, far from being generally accepted, Berry's theory is almost universally rejected by the relevant scientific community. That finding was well supported: The American National Standards Institute almost unanimously rejected a proposal to require latching doors on stand-up forklifts. (Berry was the only member who voted in favor of the proposal, which had been submitted by Berry's boss.) And not a single forklift manufacturer markets stand-up, rear-entry forklifts with latching doors.

The district court did not abuse its discretion when it excluded Berry's testimony as unreliable. And without Berry's testimony, Lawrence cannot survive summary judgment on her design-defect claim.

B.

Lawrence argues that the district court should not have granted Raymond summary judgment on her failure-to-warn claim. To prevail under Ohio law, Lawrence had to prove, among other things, that Raymond had a duty to warn her. *Freas v. Prater Constr. Corp.*, 573 N.E.2d 27, 31 (Ohio 1991). A manufacturer has a duty to warn if it "knew or, in the exercise of reasonable care, should have known about [the] risk" that allegedly caused the plaintiff's injury, so long as that risk was not "open and obvious . . . or . . . a matter of common knowledge." *Crislip v. TCH Liquidating Co.*, 556 N.E.2d 1177, 1182 (Ohio 1990). Here, the district court found that the risk identified by Lawrence—"crush injuries to the left foot or ankle"—was an obvious danger.

Lawrence contends that the district court misidentified the risk about which Raymond had a duty to warn. According to Lawrence, she was injured because the forklift "jarred" her. She implies that this risk was not obvious and that Raymond therefore had a duty to warn her about it.

Lawrence points to no evidence, however, that the relevant risk here was that the forklift would jar her out of the operator compartment. And she concedes she cannot remember what happened during the accident, and merely assumes she must have been jarred. Lawrence did not present to the district court evidence creating a genuine issue that her injury was caused by a risk of "jarring." That defeats her failure-to-warn claim.

The district court's judgment is affirmed.