NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0470n.06

No. 14-6307

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jun 25, 2015
DEBORAH S. HUNT, Clerk

SYLVIA L. BENNETT,                        )
                                          )
        Plaintiff-Appellant,              )
                                          )
            v.                            )        ON   APPEAL   FROM   THE
                                          )        UNITED  STATES  DISTRICT
LOUISVILLE METRO GOVERNMENT,              )        COURT  FOR  THE  WESTERN
                                          )        DISTRICT OF KENTUCKY
        Defendant-Appellee.               )
                                          )

BEFORE: SUTTON, GRIFFIN, and WHITE, Circuit Judges.

        GRIFFIN, Circuit Judge.

        Plaintiff Sylvia Bennett appeals the district court's grant of summary judgment in favor

of defendant Louisville Metro Government on her claim of Title VII retaliation. We affirm.

                                          I.

        Bennett—a social worker employed by Louisville at its Community Corrections Center—

complained to her supervisors in November 2011 about the conduct of one of her colleagues at

the correctional facility, Officer Henry Waldridge. Bennett's supervisors met with both Bennett

and Waldridge, but the friction between the two continued. Finally, Bennett notified her

supervisors that she was concerned because she felt "unsafe in [Waldridge's] presence,"

inasmuch as she feared that he would not prevent inmates from harming her if they attempted to

do so. She also noted that she felt that she had no other recourse than to file a "formal complaint" about the workplace situation.

Mark Bolton, the director of Louisville Metro Department of Corrections, met with Bennett shortly afterward to discuss her complaints about Waldridge. According to Bennett, Bolton did not permit Bennett to finish describing her complaints before he told her that "you have concerns, you're not going back over there," and that she would be transferred to a different facility. Bolton, on the other hand, asserts that he had heard only that Bennett had expressed fears about her safety and that he was attempting to triage a possibly dangerous workplace situation: "I had no idea what Ms. Bennett was going to express to me regarding her . . . personal safety. The personal safety issue was a trigger for me that I needed to do something and I needed to do it immediately." According to Bolton, he decided to open an investigation right away, "[a]nd as a result of that investigation and to ensure her safety, I was going to remove her from that work site until we could be sure that her safety wasn't being compromised in any way[,] shape or form."

The day after he met with Bennett, Bolton sent her a memo formalizing her "involuntary change of assignment" to the main jail complex from the community correctional center where she had previously been working. The memo promised Bennett that "the safety of you and all Corrections employees is something that I take quite seriously[,] and I will expedite this investigation and keep you abreast of what we find."

Bennett's schedule, salary, and benefits remained the same at her new position, but her duties were significantly different. She no longer was able to coordinate several of the treatment programs in which she had previously participated, nor did she have any designated office space or equipment for the first several weeks after her reassignment. Despite the fact that she no

longer had responsibility for the programs that she had previously overseen and was no longer assigned to any particular programs, Bennett was "given broad autonomy" to pursue other relevant programming in "any area of her choice" and was permitted to continue her participation in several other community programs—such as re-entry programming—that she had previously overseen. According to Bennett, however, she "suffered severe stress, depression and anxiety when she was stripped of her duties and forced to report to work without having a work to do."

Although Bennett claims in her brief that the investigation into Waldridge's conduct concluded on March 27, 2012—almost four months before she was permitted to return to her position at the community correctional center—there is no evidence in the record that supports this assertion. Nor is there any indication in the record as to what result was reached by the investigation into Bennett's assertions.

Ultimately, Bennett filed suit against Louisville in the district court and alleged in an amended complaint a Title VII claim for retaliation. Louisville moved for summary judgment, and the district court granted the motion, reasoning (1) that Bennett's temporary transfer was not a "materially adverse job action," even though her duties changed, because her pay remained the same and the transfer was temporary, and (2) that Bennett had failed to establish that Louisville's stated reason for the transfer—Bennett's safety—was pretext for retaliation. Bennett appeals.[1]

## II.

We review the district court's summary judgment determination de novo. *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 526 (6th Cir. 2014). Summary

---

[1]Bennett does not appeal the disposition of any of her other claims.

judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

First, Bennett argues that the district court erred in concluding that her transfer was not "materially adverse" and that she therefore failed to establish a prima facie case of retaliation under Title VII. *See Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (listing elements of a prima facie case). She asserts that a reasonable worker might very well think twice about reporting suspected discrimination if she knew that doing so would cause her employer to transfer her offsite and keep her treading water on nonsubstantive projects for five months. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (for purposes of a retaliation claim, an employment action is materially adverse as long as it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination"); *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007) (involuntary placement on paid administrative leave may be materially adverse).

However, we need not decide the issue because, assuming arguendo that the district court erred in ruling that Bennett failed to make out a prima facie case of retaliation, it nevertheless correctly entered summary judgment in favor of defendant on the issue of pretext. Louisville claims that it transferred Bennett not out of retaliation but because it was concerned for her safety. Bennett concedes that "safety would be a legitimate, non-discriminatory reason if it actually had motivated the Department's actions," but argues that Louisville's safety rationale was a smokescreen intended to obscure its true, retaliatory motive. We disagree. The district court did not err in ruling that Bennett failed to identify evidence upon which a jury could find that Louisville's stated reason for Bennett's involuntary transfer was pretext for impermissible retaliation.

To show pretext, a plaintiff must "produce[] evidence from which a jury could reasonably doubt the employer's explanation" because, for example, the employer's stated reasons have "no basis in fact," "did not actually motivate the employer's action," or "were insufficient to motivate the employer's action." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 & n.4 (6th Cir. 2009).

Bennett has produced no such evidence. First, she contends that pretext is demonstrated by the fact that Bolton permitted subordinates to resolve her initial complaints about Waldridge and then, when he did become personally involved in the situation, responded much more drastically than Bennett's immediate supervisors had. Although Bolton was copied on one of Bennett's emails complaining about Waldridge being disrespectful and rude to her, Bolton became personally involved only once he became aware that Bennett had expressed fears for her safety. Removing Bennett from the facility is certainly consistent with Bolton's assertion that he wanted to ensure that Bennett was out of peril, and nothing in the record suggests that Bolton was not tailoring his response to what he thought were genuine concerns over personnel safety.

Bennett also argues that pretext is evident from the shoddy nature of Louisville's investigation and the fact that she was not reinstated to her previous position until almost four months after the investigation had concluded. If true, these features of Bennett's case are quite curious. But none of Bennett's factual assertions about these matters are supported by anything in the record. Most of Bennett's factual assertions in both this court and the district court cite to portions of depositions that were never entered into the district court record. Apart from counsel's assertions on brief, there is no evidence in the record about the nature of the investigation, who was interviewed, or when it concluded relative to Bennett's return to her position at the community correctional center.

Counsel's reliance on items that are not part of the record does not suffice to generate a genuine issue of material fact. When responding to a motion for summary judgment, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "[T]he non-moving party must present evidence upon which a reasonable jury could find in her favor." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012). "A plaintiff cannot simply sit back and highlight deficiencies in the defendant's argument without providing some affirmative support for its own position." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012) (confirming that current Rule 56(c) mirrors prior Rule 56(e)). The party opposing summary judgment must instead "show that she *can* make good on the promise of the pleadings by laying out enough evidence that *will be* admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). Bald assertions do not a jury question make; a jury could not find in favor of Bennett on the strength of her counsel's representations alone.

Although Bennett's briefs cite to several depositions that purportedly support her position, none of them are in the record. Bennett did not place any evidence on pretext before the district court; she simply asserted that various individuals had given depositions consistent with her theory without submitting the depositions to the district court for review. Under these circumstances, the district court did not err in ruling that Bennett failed to demonstrate the existence of a genuine issue of fact on the matter of pretext.

III.

For these reasons, we affirm the judgment of the district court.